# Order

Michigan Supreme Court
Lansing, Michigan

June 11, 2021

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

162445

*In re* FOUST, Minors.

SC: 162445
COA: 349545
Genesee CC Family Division:
  16-133553-NA

_____/

On order of the Court, the application for leave to appeal the December 17, 2020 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

WELCH, J. (*dissenting*).

I respectfully dissent from the Court's order denying leave to appeal.

It is now well settled that, unlike in child custody matters, Michigan law does not permit a trial court presiding over a termination of parental rights case to conduct an *in camera* interview of a minor for the purpose of determining that minor's best interests. See *In re Ferranti*, 504 Mich 1, 35 (2019) (explaining how there is " 'nothing in the juvenile code, the caselaw, the court rules, or otherwise [that] permits a trial court presiding over a termination of parental rights case to conduct in camera interviews for purposes of determining their best interests' ") (alteration in original), quoting approvingly *In re HRC*, 286 Mich App 444, 454 (2009). In *Ferranti*, we recognized the concern that "*in camera* interviews might unduly influence the trial court's factual findings and termination decision, and because the process provides no opportunity for cross-examination by respondents or their counsel, the practice also prejudices a respondent's ability to impeach the witness and forecloses meaningful review." *Ferranti*, 504 Mich at 32.

The current case highlights these exact concerns. The trial court returned one child to respondent-mother's care but terminated respondent-mother's parental rights to two other children. In supporting this split decision, the trial court focused on the relative advantages of the foster home, the possibility of adoption, and the preferences of the

children as discerned from an *in camera* interview.[1]  That *in camera* interview was attended by the children's guardian ad litem (who had advocated for termination of parental rights) while respondent-mother was able to view the proceedings by video.  The Court of Appeals properly recognized that, under *Ferranti* and *HRC*, the trial court's use of an *in camera* interview violated respondent-mother's due-process rights.  It nevertheless held that respondent-mother could not establish that the due-process violation affected her substantial rights or that it seriously affected the fairness, integrity, or public reputation of judicial proceedings as required for relief under the plain-error standard of review.  I disagree because I believe that it is all too likely that the improper interview procedure unduly influenced the trial court's factual findings and termination decision.

Additionally, I believe the trial court's best-interest analysis did not provide enough detail to "provide a reasoned basis for its decision."  Cf. *Mich Dep't of Transp v Randolph*, 461 Mich 757, 768 (2000).  For a best-interest analysis, it is understood that "[t]he court should consider a wide variety of factors" such as (1) the child's bond to the parent; (2) the parent's parenting ability; (3) the child's need for permanency, stability, and finality; (4) the advantages of a foster home over the parent's home; (5) the parent's history of domestic violence; (6) the parent's compliance with his or her case service plan; (7) the parent's visitation history with the child; (8) the children's well-being in care, (9) the possibility of adoption; and (10) any of the best-interest factors in the child custody context as set forth in MCL 722.23.  *In re Medina*, 317 Mich App 219, 237-238 (2016) (quotation marks and citations omitted).  MCR 3.977(I)(1), which governs termination proceedings, provides that "[b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient."  While there is no expectation that every best-interest factor be analyzed, I find it troublesome in this matter that the trial court failed to address most of the factors, including the existence (or nonexistence) of a parent-child bond.  When there is an inadequate basis to facilitate our understanding of the reasoning supporting a particular decision or outcome, we should not hesitate to remand for further proceedings rather than substituting our own views or assumptions.  Cf. *People v Adkins*, 436 Mich 878, 878 (1990).

The trial court's limited reasoning is especially problematic in light of its improper reliance on the children's *in camera* interviews.  The record reflects that the trial court and the minor children's lawyer-guardian ad litem joined together in a one-sided manner to ask the minor children (who were not placed under oath) questions without any opportunity for cross-examination.  Cross-examination is the quintessential example of

---

[1] An *in camera* interview is one conducted "[i]n the judge's private chambers."  *Black's Law Dictionary* (11th ed).  The particular interview procedure employed in this case physically occurred in the trial court judge's chambers although it was not entirely "private" because it was transcribed and simultaneously broadcast into the courtroom for the benefit of the parties and, presumably, any public spectators.

the procedural safeguards necessary to permit effective, accurate, and reliable fact-finding. Other witnesses' views are not its substitute. Absent the opportunity for a respondent-parent to ask direct follow-up questions to clarify a point or to cross-examine as to stated facts elicited by an opposing attorney's questioning, it is unknown whether the information obtained is worthy of reliance. For that exact reason, a respondent-parent is "afforded the opportunity to present evidence and witnesses at a hearing on the termination of parental rights and to confront and cross-examine evidence and witnesses used against the respondent." See *In re Trejo Minors*, 462 Mich 341, 355 (2000). Although the "primary beneficiary" of the best-interest inquiry is and must always be the child, the fact-finding related to the application of the best-interest test also serves to protect the respondent-parent. See *id*. at 356.

The trial court's analysis was too limited and irreversibly colored by a process that our precedent already recognizes as a violation of respondent-mother's due-process rights. This defect is especially concerning given that the trial court still thought well enough of respondent-mother to conclude that termination of parental rights was not in the best interests of one of the children, thereby splitting these brothers into different homes despite record evidence indicating that they maintained a preference for remaining together. Admittedly, the existence of a transcribed record and the fact that respondent-mother could view the examination simultaneously via video distinguishes this case from *Ferranti* and *HRC*. I do not think, however, that a transcribed record and video feed serve as a cure-all given the one-sided nature of the *in camera* examination. In any event, because *Ferranti* and *HRC* both held that a trial court cannot reasonably be expected to un-ring the bell and set aside any improper influence resulting from the *in camera* interview, I would have relied on the example of those precedents by vacating the trial court's best-interest determination and remanding for additional fact-finding. For these reasons, I respectfully dissent from the denial of leave.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 11, 2021



Clerk

b0608